IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

TYRONE PICKETT,              )
                            )
        Plaintiff,           )
                            )
    vs.                      )          5:17-cv-01413-LSC
                            )
NANCY BERRYHILL,             )
Commissioner of              )
Social Security,             )
                            )
        Defendant.           )

## MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Tyrone Pickett, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a Period of Disability and Disability Insurance Benefits ("DIB"). Mr. Pickett timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Pickett was 44 years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 21, 111.) He has a high school education and past work experiences as a general manager, sales manager, salesman, and material handler.

(Tr. at 21, 121.) Mr. Pickett claims that he became disabled on November 23, 2012, as a result of multiple bulging lumbar discs, patellar/knee pain, anxiety and panic attacks, and depression. (Tr. at 133.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Mr. Pickett last met the insured status requirements of the Social Security Act on December 31, 2015. (Tr. at 13.) She further determined that Mr. Pickett did not engage in SGA from the alleged onset of his disability on November 23, 2012, through the date last insured, December 31, 2015. (*Id.*) According to the ALJ, through the date last insured, Plaintiff's status-post lumbar discectomy, status-post right knee arthroscopy, and anxiety disorder are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, she found that, through the date last insured, these impairments neither met nor medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 14.) The ALJ determined that, through the date last insured, Mr. Pickett had the RFC to lift and carry up to 20 pounds occasionally and 10 pounds frequently; he could

stand or walk up to six hours and sit up to six hours total in an eight-hour work day; he could push and pull with the right lower extremity; he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders, ropes or scaffolds; he should avoid concentrated exposure to extreme heat and cold; he should never be exposed to hazards such as unprotected heights or hazardous machinery; he could understand, remember, and carry out short and simple instructions, but that he would have difficulty with detailed tasks and instructions; he could maintain attention and concentration in two-hour increments with customary breaks; he could have only occasional contact with the public; he would work best in small groups of familiar co-workers and work better with things than people; and that changes in the workplace should be occasional and introduced gradually. (Tr. at 15-16.)

Next, the ALJ obtained the testimony of a Vocational Expert ("VE") and determined at steps four and five of the sequential evaluation process that Plaintiff was not capable of performing his past relevant work but that he could make an adjustment to other jobs that exist in significant numbers in the national economy, such as housekeeper, packager, and laundry worker. (Tr. at 21-22). The ALJ concluded her findings by stating that Plaintiff was not under a "disability," as

defined in the Social Security Act, from the alleged onset date through the date last insured. (Tr. at 22.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*,

793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Mr. Pickett's only argument on appeal is that the ALJ committed reversible error by failing to address his post-hearing written objections regarding the reliability of the VE's hearing testimony.[1] For the following reasons, the argument lacks merit.

---

[1] Plaintiff has not raised any other challenges to the ALJ's decision and has thus waived any other arguments. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (noting claimant waived issue because he did not elaborate on the claim or provide citation to authority regarding the claim); *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

At the fifth step of the sequential evaluation process, the burden shifts from the claimant attempting to prove disability to the Commissioner attempting to prove that there is other work available in significant numbers in the national economy that the claimant is able to perform. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "If the Commissioner can demonstrate that there are jobs the claimant can perform, the claimant must prove [he] is unable to perform those jobs in order to be found disabled." *Id.* One way in which the ALJ may determine whether the claimant is able to perform other work is by posing hypothetical questions to a VE. *Id.* at 1229. The Social Security regulations provide that an ALJ may rely upon a VE's knowledge or expertise. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); *see also Jones*, 190 F.3d at 1230 (explaining that a VE's testimony is "crucial to . . . step 5 of the sequential evaluation process" because the VE can supplement the Dictionary of Occupational Titles ("DOT") with additional information gleaned from his experience with employers and from literature such as census reports).

At Plaintiff's hearing, the ALJ posed a hypothetical to the VE involving an individual with Plaintiff's RFC and additional limitations and then asked whether a person with those limitations could perform any jobs. (Tr. at 340.) The VE responded as follows:

Yes, some examples . . . at the light level of exertion unskilled work would include housekeeper. Representative DOT code is 323.687-014. There are more than 500,000, that's 5-0-0, 0-0-0, in the national economy. Also packager, representative DOT code is 559.687-074. There are more than 400,000, that's 4-0-0, 0-0-0, in the national economy. Also laundry worker, representative DOT code is 361.687-014. There are more than 400,000, that's 4-0-0, 0-0-0, in the national economy.

(*Id.*) Plaintiff's counsel then sought and received permission from the ALJ to ask the VE a series of questions "about her job numbers." (Tr. at 344). The following exchange occurred between Plaintiff's counsel and the VE:

Q:     Ms. Azzam, in testifying about the number of jobs that might be available in the national economy in response to hypothetical #1 you used the term representative DOT Codes and that leads me to believe that there may be more than one DOT Code involved in those job numbers. Is that correct?

A.     Yes, sir, that's correct.

Q.     Would you explain how that occurs?

A.     Yes, sir, that refers to a class of jobs, for example assembler versus electronics assembler. So it takes into consideration all assembler jobs at the light level that are classified as unskilled.

Q.     So you're not really identifying the number of jobs that might be available under just one DOT Code number?

A.     No, sir, that's correct. I'm using a class of jobs.

Q.     And could you please give me the source of those specific job numbers? And I realize that you probably look at a wide variety of resources and information, but ultimately what I would like to know is who is it that comes up with specific numbers? For

example, the housekeeper there are about 500,000 jobs, a packager there are more than 400,000 jobs and so forth. Can you tell me where that number comes from?

A.    Yes, sir, that's a combination of information that I access on a regular and ongoing basis available for – from the Bureau of Labor Statistics, the Census Bureau, state employment data, SkillTRAN, Job Browser Pro, Oasis, the U.S. publications *Employment Quarterlies*. I look for job numbers in a variety of sources in order to weigh them against each other and feel certain that I have fairly accurate numbers.

Q.    So ultimately you're responsible or that job number, not SkillTRAN or somebody? You're not just quoting one of their numbers?

A.    No, sir, I'm relying on my expertise and my experience and my review of all the number sources that are available – publicly available out there.

(Tr. at 344-46.)

According to Plaintiff, on November 8, 2016, his counsel faxed a post-hearing memorandum to the ALJ, supported by eight exhibits, in which his counsel made a series of objections regarding the VE's testimony (hereinafter "the Objections Memorandum"). Specifically, Plaintiff's counsel challenged the VE's reliance upon employment data from Job Browser Pro, published by SkillTRAN, which, he argued, is not among the vocational resources administratively noticed by the Social Security Administration at 20 C.F.R. § 404.1566(d) and has never been properly peer reviewed and does not eliminate obsolete job descriptions and

occupations from its software program. Plaintiff's counsel also objected to the VE's reliance upon the Dictionary of Occupational Titles ("DOT"), which, he argued, is outdated. According to Plaintiff, the jobs identified by the VE as available to someone with Plaintiff's vocational characteristics and RFC are actually not available, based on information from a different source, the U.S. Department of Labor's Occupational Information Network ("O*NET"). Plaintiff contends that O*NET has a different skill level requirement than identified in the DOT for the jobs identified by the VE, which makes them unavailable based on Plaintiff's RFC.

Plaintiff's counsel's Objections Memorandum is not included in the administrative record. The ALJ's decision included in the administrative record also does not include an exhibit list. The ALJ never discussed or acknowledged Plaintiff's counsel's Objections Memorandum in her decision denying benefits, which was issued three months later, on February 22, 2017. Plaintiff's counsel appealed to the Appeals Council following the unfavorable decision, arguing that the ALJ should have included an exhibit list with her decision and should have ruled on his objections to the VE's testimony in her decision, and the Appeals Council denied review.

In the instant appeal, Plaintiff first argues that the ALJ was required, pursuant to the Social Security Administration's Hearings, Appeals and Litigation

Manual ("HALLEX"), (S.S.A.) 2005 WL 1863821 (June 21, 20015), *et seq.*, to discuss and rule upon his objections to the VE's testimony made in his post-hearing Objections Memorandum. In response, the Commissioner points out that although Plaintiff alleges to have faxed the Objections Memorandum to the hearing office, Plaintiff has not provided evidentiary support that the objections were ever actually received by the ALJ. The Commissioner also argues that, even assuming the ALJ received the Objections Memorandum but failed to address it in her decision, such a failure did not prejudice the plaintiff.

The HALLEX is a policy manual written by the Social Security Administration to provide guidance on procedural matters. *Warren v. Astrue*, 830 F. Supp. 2d 1369, 1372 (S.D. Fla. 2011). HALLEX Rule I-2-6-74(C) provides that "the claimant and the representative have the right to question the VE fully only any pertinent matter within the VE's area of expertise." HALLEX I-2-6-74(C) (S.S.A.), 1993 WL 751902 (June 16, 2016). HALLEX Rule I-2-6-74(B) requires that "the ALJ must . . . rule on any objection(s) [to the VE's testimony] on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision." HALLEX I-2-6-74(B) (S.S.A.), 1993 WL 751902 (June 16, 2016). The Eleventh Circuit Court of Appeals "has not decided whether HALLEX carries the force of law." *McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir.

2016) (citing *George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009) (calling the assumption that HALLEX carries the force of law "a very big assumption")). "While the Eleventh Circuit has not specifically addressed whether the HALLEX creates judicially-enforceable rights, '[w]hat is certain, however, is that—if it does—remand is mandated only when the ALJ violates procedures in the HALLEX.'" *Warren*, 830 F. Supp. at 1372. Nonetheless, even if the ALJ violates HALLEX procedures, the Eleventh Circuit has held that "an agency's violation of its own governing rules must result in prejudice before we will remand to the agency for compliance." *Carroll v. Comm'r of Soc. Sec.*, 453 F. App'x 889, 892–93 (11th Cir. 2011) (discussing the HALLEX specifically) (citing *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. Unit A Sept. 1981)).

In *Rowland v. Colvin*, No. 5:15-cv-61, 2017 WL 945021, at *3-4 (S.D. Ga. Mar. 10, 2017) (report & recommendation adopted by district court in 2017 WL 1172110), on which Plaintiff relies for his argument that the ALJ is required to address objections to VE testimony under the HALLEX rule, the district court actually ultimately agreed with the Commissioner that the ALJ's failure to address post-hearing objections to the VE's testimony was harmless error because there was no prejudice to the plaintiff.

Similarly to *Rowland*, the Court sees no prejudice here from the ALJ's failure to rule upon Plaintiff's Objections Memorandum, assuming she received it. First of all, Plaintiff's counsel at the hearing had the opportunity to cross-examine the VE. Indeed, Plaintiff's counsel asked the VE specifically about what sources she used in estimating the number of available jobs, the specific issue Plaintiff raised in the Objections Memorandum and now raises before this Court. (Tr. at 344-46.)

More importantly, none of the issues raised in the Objections Memorandum undermines the substantial evidence supporting the VE's testimony. The first contention Plaintiff made in the Objections Memorandum was that the ALJ should not have relied upon the VE's testimony because the VE cited to Job Browser Pro, which Plaintiff contends is an inadequate source for the ALJ to rely on. In support, Plaintiff points out that 20 C.F.R. § 404.1566(d) provides that the ALJ "will take administrative notice of reliable job information available from various governmental and other publications." The statute then goes on to delineate several examples of sources that the ALJ may use, of which Job Browser Pro is not included. *See* 20 C.F.R. § 404.1566(d).

However, other courts have upheld the use of software, including Job Browser Pro (and other software such as SkillTRAN) in instances, such as this case, where it was only one of several resources utilized by a VE in making her

assessment, including her own expertise. *See Poisson v. Astrue*, No. 2:11-cv-245-NT, 2012 WL 1067661, at *9 (D. Me. Mar. 28, 2012) (report & recommendation adopted by district court in 2012 WL 1416669) ("[w]hile the vocational expert may not have known, in precise technical detail, how the Job Browser Pro system worked, she explained why she thought that the underlying data was reliable and endorsed the numbers derived therefrom as accurate"); *Drossman v. Astrue*, No. 3:10-cv-1118, 2011 WL 4496561, at *6 (N.D. Ohio Sept. 27, 2011) ("the VE did not rely solely on the Job Browser Pro software but also consulted with other vocational experts and sources of data used by other vocational experts"); *Woodard v. Astrue*, No. 1:10–cv–327–DBH, 2011 WL 2580641 (D. Me. Jun. 28, 2011) (report & recommendation adopted by district court in 2011 WL 2890371) (the VE can properly rely on numbers generated from a software source when the VE also relies on her own professional expertise to support an opinion as to the number of jobs in the regional and national economies).

Similarly here, at the hearing, Plaintiff's counsel questioned the VE on her testimony about the number of jobs available. (Tr. at 344-46). In response, the VE testified that the numbers were from a wide variety of sources (Bureau of Labor Statistics, the Census Bureau, state employment data, SkillTRAN, Job Browser Pro, Oasis, the U.S. publications *Employment Quarterlies*) and were based on the

VE's experience and expertise. (*Id.*) This testimony puts this VE's evidence in line of what other courts have deemed acceptable testimony and distinguishes it from the primary case cited by Plaintiff, *Hancock v. Comm'r of Soc. Sec.*, 6:15-cv-206, 2016 WL 4927642 (M.D. Fla. Sept. 16, 2016) (distinguishing *Drossman* and *Poisson*, *supra*, and stating, "The VE's reliance on SkillTRAN without any testimony or evidence that she could endorse those numbers based on her knowledge and expertise rendered her testimony unreliable"). *But see Bryant v. Comm'r*, 451 F. App'x 838, 839 (11th Cir. 2012) ("The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise.").

The other objection Plaintiff's counsel made in his Objections Memorandum was that the VE's testimony was not up to date because she relied upon the DOT, but that the jobs identified by the VE as available to someone with Plaintiff's vocational characteristics and RFC are actually not available based on information from a different source, O*NET, which indicates that the three jobs identified by the VE are actually not unskilled but are semi-skilled to skilled jobs, which would make them unavailable to Plaintiff. However, as noted above, the VE did not just rely on the DOT, but also on other sources and her years of expertise and experience. (Tr. at 345). Even though Plaintiff contends the DOT is now outdated and the agency is working on a new resource for job information, that does not

negate that the regulations explicitly allow the ALJ to rely on the information in the DOT. *See* 20 C.F.R. § 404.1566(d) (providing that the ALJ will take administrative notice of reliable job information published by, among others, the DOT). In fact, the ALJ has an affirmative responsibility to ask whether a conflict exists between a VE's testimony and the DOT, *see* SSR 00-04p, 2000 WL 1898704, at *4, which the ALJ did here.

Plaintiff also contends the Appeals Council was required to remand this case once it was made aware of the existence of the Objections Memorandum that had not been ruled on by the ALJ as well as the lack of an exhibit list with the ALJ's decision. Plaintiff points to a different HALLEX rule requiring an ALJ to include an exhibit list:

> [I]f the ALJ issues a partially favorable or unfavorable decision, the exhibit list must be prepared in final form and placed in the claim file. . . . [B]ased on the constitutional due process requirement that a claimant has the right to know upon what basis the ALJ is making the decision in his/her case, the preparation of exhibit lists in partially favorable and unfavorable cases is not a discretionary practice. Exhibit lists must be prepared.

HALLEX § I-2-1-20(b)(3), 1993 WL 642969. Again, however, Plaintiff has not demonstrated prejudice stemming from the failure of the agency to follow its own governing rules, *see Carroll*, 453 F. App'x at 892–93, because the arguments offered in the Objections Memorandum do not change the fact that substantial evidence

supports the ALJ's reliance on the VE's testimony at the hearing. Further, Plaintiff's counsel's brief to the Appeals Council, while arguing that the case should be remanded due to the ALJ's failure to include an exhibit list and a discussion of the Objections Memorandum in violation of the HALLEX, did not advise the Appeals Council of the substantive arguments he made in the objections. (Tr. at 105-05.) The Appeals Council fully considered Plaintiff's brief, including the issue of the lack of a final exhibit list and the ALJ not addressing the objections regarding the VE, but did not find that those issues required a change in the ALJ's decision. (Tr. at 4-7). The Appeals Council was not required to include any additional articulation about its decision. S*ee Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783-85 (11th Cir. 2014).

In sum, Plaintiff has not identified a harmful error in the ALJ's failure to address the objections to the VE's testimony, and the Court need not remand this case.

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Pickett's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON FEBRUARY 28, 2019.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704